JUDGE RAMOS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

14 CV 9657

MILCIADES PEPIN,

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

Defendant.

**COMPLAINT**

Civil Action No.

**JURY TRIAL DEMANDED**

FILED
U.S. DISTRICT COURT
2014 DEC -8
S.D. OF N.Y.

Plaintiff Milciades Pepin, as and for his Complaint against Defendant, respectfully states as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff brings this action under 42 U.S.C. § 1983 seeking monetary and declaratory relief against Defendant for committing acts with the intent and for the purpose of depriving Plaintiff of property without the procedural due process guaranteed under the Fourteenth Amendment of the Constitution of the United States, and for refusing to or neglecting to prevent such deprivations and denials to Plaintiff.

2. Plaintiff seeks nominal and compensatory damages, to the extent allowable by law, and declaratory relief regarding the unconstitutional acts and practices of Defendant.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 for claims arising under 42 U.S.C. § 1983.

4. This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

5. The Southern District of New York, pursuant to 28 U.S.C. § 1391, is the proper venue for this action because the events giving rise to Plaintiff's claims occurred in New York County.

**PARTIES**

6. Plaintiff Milciades Pepin is a resident of Bronx County and was employed by the New York City Department of Education from 1994 to October 21, 2010, the effective date of his discontinuance as a probationary assistant principal of the New York City Department of Education.

7. Defendant New York City Department of Education ("NYCDOE") is a school board organized under and existing pursuant to the Education Law of the State of New York, and, for all purposes, serves as the public employer of all persons appointed or assigned by it. At all relevant times herein, the NYCDOE was a "person" acting under the color of state law pursuant to 42 U.S.C. § 1983.

**STATEMENT OF FACTS**

8. Plaintiff possesses a permanent New York State School District Administrator certificate and a permanent New York State School Administrator and Supervisor certificate.

9. Upon information and belief, Plaintiff also possesses a permanent New York City Administrator license. Pursuant to Chancellor's Regulation C-205, a New York City license is required for purposes of assignment, appointment, and service in the NYCDOE.

10. In 1994, Plaintiff was hired by the NYCDOE as a classroom teacher of bilingual special education. After he completed coursework in instructional technology and became licensed as an assistant principal, Plaintiff was employed by the NYCDOE as a probationary assistant principal to develop, coordinate, and incorporate emerging educational technologies into curricula.

11. In 2006, Plaintiff joined the Association of Dominican-American Supervisors and Administrators ("ADASA"). The mission of ADASA was to enhance the skills and promote the excellence of Dominican-American educational supervisors and administrators via professional development, support, and networking.

12. Through ADASA, Plaintiff met and befriended Henry Rubio, then Principal of A. Philip Randolph High School ("Principal Rubio"); J. David Jimenez, Principal of Manhattan Center for Science and Mathematics ("Principal Jimenez"); Fausto De La Rosa, Principal of Unity Center for Urban Technologies ("Principal De La Rosa"); and Francesca Pena, then Superintendent of Manhattan High Schools ("Superintendent Pena").

13. Principals Rubio, Jimenez, and De La Rosa created a program that allowed Plaintiff to incorporate educational technology in the curricula of each principal's school simultaneously. In September, 2008, Plaintiff became the interim

Assistant Principal of Technology who served two days a week under Principal Rubio, two days a week under Principal Jimenez, and one day a week under Principal De La Rosa.

14. The schools at which Plaintiff worked were initially under the supervision of Superintendent Pena, but Elaine Gorman ("Superintendent Gorman") was appointed the Superintendent of Manhattan High Schools during the 2009-2010 school year.

15. Eventually, the friendship of Plaintiff with Principals Rubio and Jimenez deteriorated so severely that Principal Rubio filed a complaint in January, 2010 with the Special Commissioner of Investigation ("SCI") alleging that Plaintiff had accessed his email accounts. During the course of the investigation, Principal Jimenez provided statements that supported the allegations against Plaintiff.

16. On or about August 11, 2010, the SCI released an investigative report ("SCI report") which substantiated that Plaintiff used "FlexiSPY" software to access the email accounts of Principal Rubio, Principal Jimenez, Principal De La Rosa, and Superintendent Pena. The SCI report also substantiated that Plaintiff sent a prank email to Principal Rubio, and copied to Superintendent Pena, alleging that Plaintiff, Principal Rubio, and Superintendent Pena were involved in a love triangle.

17. On or about September 15, 2010, Plaintiff met with Superintendent Gorman to discuss the SCI report.

18. In a disciplinary letter dated September 17, 2010, Superintendent Gorman concurred with the findings of the SCI that substantiated Plaintiff used FlexiSPY software to access the e-mails of other NYCDOE employees. She also found that

Plaintiff sent inappropriate e-mails to NYCDOE accounts, an allegation not substantiated by the SCI.

19. In a letter dated October 21, 2010, Superintendent Gorman advised Plaintiff that his service as a probationary assistant principal was discontinued and his social security number would be placed on the ineligible/inquiry list. Superintendent Gorman did not terminate any licenses or certificates held by Plaintiff.

20. On or about December 3, 2010, Principal Rubio issued Plaintiff an unsatisfactory rating for the 2009-2010 school year. The unsatisfactory rating was based on substantiated misconduct in the SCI report and Superintendent Gorman's disciplinary letter of September 17, 2010.

21. Pursuant to Sections 4.3.1 and 4.3.2 of the Bylaws of the NYCDOE, Plaintiff requested a hearing (known as the "Chancellor's Committee Review") to review his discontinuance and the issuance of an unsatisfactory rating.

22. During the hearing on January 4, 2011, Robert Caiati ("Investigator Caiati"), the lead SCI investigator in Plaintiff's case, testified that he did not substantiate that Plaintiff used FlexiSPY software to access the e-mail accounts of Principals Rubio, Jimenez, and De La Rosa. Investigator Caiati's testimony contradicted the findings of the SCI report.

23. Investigator Caiati also testified that he did not substantiate that Plaintiff was the source of disturbing e-mails which were allegedly received by Superintendent Pena and Principals Rubio, Jimenez and De La Rosa. The only misconduct of Plaintiff substantiated by Investigator Caiati was that Plaintiff sent an e-mail regarding a love

triangle.

24. A copy of the email has not been produced by the SCI or the NYCDOE. Upon information and belief, the prank email was sent in September, 2009, but was not reported by Principal Rubio until January, 2010 when he first contacted the SCI.

25. The alleged misconduct should not be included in Plaintiff's employment file. Principal Rubio waited four months to report the prank email, and, pursuant to the contract between the NYCDOE and the Council of Supervisors and Administrators, an incident which has not been reduced to writing within three months of its occurrence may not be later added to the file.

26. After considering the testimony and evidence presented at the hearing, the Chancellor's Committee unanimously concurred with the recommendation to discontinue Plaintiff's probationary service, and the Chairperson recommended the denial of Plaintiff's appeal from the unsatisfactory rating.

27. In a letter dated March 18, 2011, Geraldine Taylor-Brown, who replaced Superintendent Gorman as Manhattan High Schools Superintendent, informed Plaintiff that she reaffirmed the previous action which resulted in the discontinuance of Plaintiff's probationary service as of October 21, 2010.

28. In or about April, 2011, Plaintiff brought a proceeding pursuant to article 78 of the New York Civil Practice Law and Rules to annul the discontinuance of his probationary employment, the issuance of the unsatisfactory rating, and his placement on the ineligible/inquiry list. The case was heard by the Hon. Lucy Billings, Justice of the New York County Supreme Court.

29. The NYCDOE filed a cross-motion to dismiss the article 78 petition. Notably, the NYCDOE asserted that it does not maintain an ineligible/inquiry list, but assigns "problem codes" to employees who do not voluntarily discontinue their employment with the NYCDOE.

30. In an interim decision dated October 5, 2012, Justice Billings granted the NYCDOE's motion to dismiss the petition insofar as it sought reinstatement of Plaintiff's probationary employment. *See Pepin v New York City Dept. of Educ.*, 2012 NY Slip Op 52447 (Sup. Ct., New York County 2012).

31. The Court held that Plaintiff, as a probationary employee, could be dismissed for any reason or no reason at all, and Plaintiff's admitted prank email was sufficient reason to discontinue Plaintiff. Justice Billings otherwise denied the cross-motion to dismiss the petition.

32. In a decision dated January 27, 2014, the Supreme Court annulled Plaintiff's unsatisfactory rating and held that a problem code assigned to Plaintiff could not be "supported by the annulled unsatisfactory rating, unsubstantiated misconduct recited in a Special Commissioner report, or misconduct not documented in [Plaintiff's] employment file." *Pepin v New York City Dept. of Educ.*, 2014 NY Slip Op 30342(U) (Sup. Ct., New York County 2014).

33. The NYCDOE asserted that Plaintiff was not prohibited from reapplying for a position with the NYCDOE.

34. Chancellor's Regulation C-30(III) provides that "[o]nly those applicants who are on qualifying supervisory eligible lists based on possession of a Certificate of

Eligibility for Supervisory Placement issued by the Division of Human Resources and Talent may apply for supervisory positions."

35. On March 4, 2014, Plaintiff applied for four Certificates of Eligibility ("COEs").

36. Plaintiff was not granted a COE because of the problem code assigned to him and was therefore denied employment with the NYCDOE.

37. Plaintiff's employment file did not properly contain documentation of substantiated misconduct, and all of Plaintiff's ratings had been satisfactory except for the unsatisfactory rating annulled by Justice Billings.

38. On or about March 10, 2014, Plaintiff filed a motion to hold the NYCDOE in contempt for failing to comply with the January 27, 2014 order of Justice Billings restricting the assignment of a problem code to Plaintiff.

39. The NYCDOE claimed in its response to the contempt motion that the assignment of Plaintiff's problem code was based on the discontinuance of his probationary employment, and asserted that all NYCDOE employees who are discontinued are assigned a problem code.

40. Justice Billings has not yet ruled on the contempt motion, but she indicated in oral argument that the motion will be denied.

41. On or about July 15, 2014, Plaintiff brought a second article 78 proceeding, asserting that the assigned problem code prohibited Plaintiff from future employment with the NYCDOE and therefore constructively terminated his license without the due process required by Chancellor's Regulation C-31.

42. Chancellor's Regulation C-31 sets forth the procedures to be followed to terminate the New York City license(s) of untenured employees.

43. Plaintiff argued, quoting *Lehman v Bd. of Educ. of the City School District of New York*, 88 AD2d 832, 834 (2d Dept 1981), *cited with approval Kolmel v City of New York*, 88 AD3d 527 (1st Dept 2011), that "rules of an administrative agency which regulate procedure affecting substantial rights of individuals may not be waived by the agency."

44. Significantly, Plaintiff did not claim that his New York City license constituted a property right.

45. The case was again assigned to Justice Billings. In oral argument, Justice Billings opined that the NYCDOE was not required to give Plaintiff a job and indicated that the petition would be denied. The Court has not yet rendered a decision.

46. The NYCDOE continues to aver that Plaintiff is not barred from gaining re-employment with the NYCDOE.

47. Notwithstanding the averments of the NYCDOE, Chancellor's Regulation C-205 provides that persons whose probationary service was discontinued in one school of the City District may not be reappointed under the same license to another school in the City District.

48. Nearly all NYCDOE schools are allegedly in the City District since the centralization of New York City's public school system.

49. Pursuant to Chancellor's Regulation C-205, Plaintiff is prohibited from employment within the City District, thereby constructively terminating Plaintiff's New

York City license and diminishing the value of Plaintiff's New York State certificates.

50. A professional license is a valuable property right which may not be revoked or diminished in value without due process of law.

51. Plaintiff was thus deprived of property as a result of established governmental procedures without being provided a meaningful hearing before the deprivation occurred in violation of procedural due process rights guaranteed under the Fourteenth Amendment.

**FIRST CLAIM FOR RELIEF**
**Due Process – Fourteenth Amendment**
**(42 U.S.C. § 1983)**

52. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 51 as if set forth herein.

53. While acting under color of state law, the NYCDOE constructively terminated Plaintiff's New York City license without providing procedural due process before the deprivation of property.

54. As a proximate result of Defendant's actions against Plaintiff, Plaintiff has suffered monetary damages, a loss of past and future income, severe emotional distress, humiliation, mental and physical anguish and suffering, and damage to his professional reputation.

**SECOND CLAIM FOR RELIEF**
**Due Process – Fourteenth Amendment**
**(42 U.S.C. § 1983)**

55. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 51 as if set forth herein.

56. While acting under color of state law, the NYCDOE constructively terminated Plaintiff's New York City license, thereby diminishing the value of Plaintiff's New York State certificates without providing procedural due process before the deprivation of property.

57. As a proximate result of Defendant's actions against Plaintiff, Plaintiff has suffered monetary damages, a loss of past and future income, severe emotional distress, humiliation, mental and physical anguish and suffering, and damage to his professional reputation.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

A. For appropriate compensatory damages against Defendant in an amount to be determined at trial;

B. For appropriate declaratory relief regarding the unconstitutional acts and practices of Defendant;

C. For nominal damages;

D. For an award of reasonable litigation costs; and

E. For such other and further relief as may be just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury of all issues triable of right by a jury.

Dated: New York, New York
December 8, 2014

By. ______________________

Milciades Pepin
Plaintiff, *pro se*
2120 Hughes Avenue, Apt. 5B
Bronx, New York 10457
(917) 250-7588
milciades.pepin@icloud.com

VERIFICATION

STATE OF NEW YORK :
: ss.
COUNTY OF NEW YORK :

**MILCIADES PEPIN** being duly sworn, deposes and says that he is the plaintiff in this proceeding; that he has read the annexed foregoing **VERIFIED COMPLAINT,** In the Matter of Milciades Pepin against New York City Department of Education, and knows the contents thereof; that the same is true to the knowledge of deponent except as to the matters therein stated to be alleged upon information and belief, and as to those matters he believes it to be true.

12/8/2014
Milciades Pepin

Subscribed and sworn to before
me this 8th day of
December 2014

Notary Public

ABUBAKAR ABDULAI
Notary Public - State of New York
NO. 01AB6259596
Qualified in Bronx County
My Commission Expires Apr 16, 2016

Comm exp: 04 - 16 - 2016