UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------

MILCIADES PEPIN,

                  Plaintiff,

      -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION,

                Defendant.

------------------------------------------------------------

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: |
| DATE FILED: 4/28/15 |

14-CV-9657 (ER)

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

MILCIADES PEPIN
Plaintiff, *pro se*
2120 Hughes Avenue, Apt. 5B
Bronx, New York 10457
(917) 250-7588
milciades.pepin@icloud.com

Dated: New York, New York
       April 28, 2015

**TABLE OF CONTENTS**

*Page*

TABLE OF AUTHORITIES.................................................................................ii

PRELIMINARY STATEMENT...........................................................................1

STATEMENT OF FACTS...................................................................................2

ARGUMENT.......................................................................................................4

      I.     Plaintiff's claims are not barred by the doctrines of res judicata
           and collateral etoppel.........................................................................4

           A.     Plaintiff's claims are not barred by the doctrine of
                   res judicata...............................................................................4

           B.     Plaintiff's claims are not barred by the doctrine of
                   collateral estoppel....................................................................7

      II.    Plaintiff states a cause of action under 42 USC § 1983 based on
           the constructive termination of Plaintiff's New York City license................11

           A.     Plaintiff was deprived of a property interest in his New
                   York City License....................................................................11

           B.     Plaintiff was deprived of a property interest in his New
                   York City license without due process.................................17

            C.     Plaintiff was deprived of a property interest in his New
                   York State licenses without due process..............................18

      III.   Plaintiff's claim is not time-barred under the applicable statute
           of limitations.....................................................................................19

      IV.   Lawsuits filed by Plaintiff against Defendant are neither
           duplicative nor harassing.................................................................22

CONCLUSION...................................................................................................25

# TABLE OF AUTHORITIES

*Page*

**Cases**

*Applewhite v Bd. of Educ of City Sch. Dist of City of New York*
115 AD3d 427 (1st Dept 2014)..................................................................................21

*Baldwin v Hale*
68 US 223 (1864)..................................................................................................18

*Behrend v Klein*
2006 US Dist LEXIS 68652 (ED NY Sept. 25, 2006)...........................................10, 13, 16

*Bd. of Regents of State Colleges v Roth*
408 US 564 (1972)..............................................................................................11, 16

*Boddie v Connecticut*
401 US 371 (1971)..................................................................................................17

*Boguslavsky v Kaplan*
159 F3d 715 (2d Cir 1998)........................................................................................8

*Brough v Brough*
285 AD2d 913 (3d Dept 2001)..................................................................................11

*Burgos v Hopkins*
14 F3d 787 (2d Cir 1994)........................................................................................5, 6

*Cleveland Bd. of Educ. v Loudermill*
470 US 532 (1985)..................................................................................................17

*Colon v Coughlin*
58 F3d 865 (2d Cir 1995)..........................................................................................8

*Davidson v Capuano*
792 F2d 275 (2d Cir 1986)....................................................................................5, 6, 7

*Davis v Halpern*
813 F2d 37 (2d Cir 1987)..........................................................................................6

*Dunn v New York City Dept. of Educ.*
2011 NY Slip Op 51505(U) (Sup Ct, NY County 2011)....................................................14

*Page*

*Fuentes v Shevin*
    407 US 67 (1972)...................................................................................................18

*Giano v Flood*
    803 F2d 769 (2d Cir 1986)...............................................................................5, 6

*Greenwald v Community Sch. Bd. No. 27, Queens*
    42 AD2d 965 (2d Dept 1973)...............................................................12, 13, 16

*Haas v New York City Bd./Dept. of Education*
    2012 NY Slip Op 50606(U) (Sup Ct, NY County 2012)...................................14

*Kentucky Dept. of Corr. v Thompson*
    490 US 454 (1989)...............................................................................................11

*Kleinberger v Town of Sharon*
    116 AD2d 367 (3d Dept 1986)...........................................................................21

*Lehman v Bd. of Educ. of the City Sch. Dist. of the City of New York*
    88 AD2d 832 (2d Dept 1981)........................................................3, 12, 13, 16, 24

*Lombard v Bd. of Educ. of the City of New York*
    645 F Supp 1574 (ED NY 1986)...............................................11, 12, 14, 15, 16

*Marvel Characters, Inc. v Simon*
    310 F3d 280 (2d Cir 2002)...................................................................................4

*McGowan v McGowan*
    142 AD2d 355 (2d Dept 1988)...........................................................................11

*Miagra v Warren City Sch. Dist. Bd. of Educ.*
    465 US 75 (1984)...................................................................................................4

*O'Brien v O'Brien*
    66 NY2d 576 (1985)...........................................................................................11

*Pachomski v Pachomski*
    32 AD3d 1005 (2d Dept 2006)...........................................................................11

*Pauk v Bd. of Trustees of the City Univ. of New York*
    68 NY2d 702 (1986).............................................................................................5

*Page*

*Pearl v City of Long Beach*
  296 F3d 76 (2d Cir 2002)......................................................................................19

*Pepin v New York City Dept. of Educ.*
  Sup Ct, NY County, January 27, 2014, Billings, J., index No. 102044/11...........9

*Pina-Pena v New York City Dept. of Educ.*
  2014 NY Slip Op 30893(U) (Sup Ct, NY County 2014)....................................14

*Rogovin v New York City Bd. of Educ.*
  2001 U.S. District LEXIS 11923 (ED NY Aug. 17, 2001)....................12, 15, 16

*Segal v City of New York*
  368 F Supp 2d 360 (SD NY 2005).....................................................................20

*Silberstein v Silberstein*
  218 NY 525 (1916)..............................................................................................21

*Singleton v City of New York*
  632 F2d 185 (2d Cir 1980)..................................................................................19

*Smith v Russell Sage Coll.*
  54 NY2d 185 (1981)..............................................................................................5

*Sullivan v Gagnier*
  225 F3d 161 (2d Cir 2000)....................................................................................9

*Vargas v City of New York*
  377 F3d 200 (2d Cir 2004)..................................................................................10

*Veal v Geraci*
  23 F3d 722 (2d Cir 1994)....................................................................................19

*Zinermon v Burch*
  494 US 113 (1990)...............................................................................................10

**Statutes**

42 USC § 1983.................................................................1, 6, 11, 18, 19, 20

CPLR 103.............................................................................................6, 7

iv

*Page*

CPLR 7806.................................................................................................................5

Education Law (as amended by L 2002, ch 91).........................................................13

Education Law § 3020-a............................................................................................14

Federal Rules of Civil Procedure rule 12(b)(6)....................................................1, 4

**Other Authorities**

Chancellor's Regulation C-30...........................................................................13, 14

Chancellor's Regulation C-31.........................................3, 9, 14, 17, 18, 20, 22, 24

Chancellor's Regulation C-205........................................................7, 10, 15, 16, 21

*Matter of Baronat*, 11 Ed Dept Rep 150 (1972)...................................12, 13, 16, 17

## PRELIMINARY STATEMENT

Plaintiff brings this action, pursuant to 42 USC § 1983, alleging that Defendant New York City Department of Education ("DOE") deprived him of a property interest in his New York City and New York State licenses without the procedural due process guaranteed under the Fourteenth Amendment.  Defendant now moves to dismiss the Complaint pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that: (1) Plaintiff's claims are barred by res judicata; (2) Plaintiff's claims are barred by the applicable statute of limitations; and (3) Plaintiff has failed to state a claim for relief that is plausible on its face.

The motion should be denied.  Plaintiff's claims pursuant to § 1983 are not barred by the doctrine of res judicata because the relief Plaintiff seeks was not available to him in the article 78 proceedings that he brought.  In addition, Plaintiff has a property interest in his New York City license because hiring and firing is now decentralized within the DOE.  The constructive termination of Plaintiff's New York City license therefore deprived him of a property interest in his New York City license, as well as in his New York State licenses, without procedural due process.  Finally, this action was commenced within the applicable statute of limitations of three years.  In April, 2014, Defendant claimed, for the first time, that Plaintiff's problem code was based solely on his discontinuance.  Consequently, the constructive termination of Plaintiff's license was solely based on his discontinuance, giving rise to the cause of action asserted in the Complaint.

For the reasons discussed herein, Plaintiff respectfully requests the Court to deny Defendant's motion to dismiss the Complaint.

1

## STATEMENT OF FACTS

On or about August 11, 2010, the Office of the Special Commissioner of Investigation ("SCI") released an investigative report ("SCI report") which substantiated that Plaintiff used "FlexiSPY" software to access the email accounts of three principals and a superintendent. Compl. ¶ 16. The SCI report also substantiated that Plaintiff sent a prank email alleging a love triangle. *Id.*

In a letter dated October 21, 2010, Superintendent Gorman advised Plaintiff that, based on the SCI report, his service as a probationary assistant principal was discontinued and his social security number would be placed on the ineligible/inquiry list. *Id.* ¶¶ 18-19. Plaintiff was subsequently informed that he received an unsatisfactory rating for the 2009-2010 school year. *Id.* ¶ 20.

Plaintiff requested a hearing to review his discontinuance and the issuance of an unsatisfactory rating. *Id.* ¶ 21. During the hearing, the lead SCI investigator in Plaintiff's case testified that he did not substantiate that Plaintiff used FlexiSPY software to access email accounts. *Id.* ¶ 22. His testimony contradicted the findings of the SCI report. *Id.* The only alleged misconduct of Plaintiff which was substantiated was his admission that he sent a prank email regarding a love triangle. *Id.* ¶ 23.

Nonetheless, the hearing officers unanimously concurred with the recommendation to discontinue Plaintiff's probationary service, and a determination was made to recommend the denial of Plaintiff's appeal of his unsatisfactory rating. *Id.* ¶ 26. In a letter dated March 18, 2011, Geraldine Taylor-Brown, who replaced Superintendent Gorman as Manhattan High Schools Superintendent, informed Plaintiff that she reaffirmed the

previous action which resulted in the discontinuance of Plaintiff's probationary service as of October 21, 2010. *Id.* ¶ 27. Plaintiff thereafter brought two article 78 proceedings. *Id.* ¶¶ 28, 41.

Plaintiff's first article 78 proceeding successfully challenged his unsatisfactory rating and placement on the ineligible/inquiry list. *Id.* ¶ 32. The court annulled his unsatisfactory rating and problem code to the extent that the problem code was supported by misconduct not documented in his employment file, but upheld Plaintiff's discontinuance on the grounds that a probationary employee may be terminated for any reason or no reason at all. *Id.* ¶¶ 30-32.

After the court's decision, Plaintiff's problem code continued to prevent his employment with the DOE, and Plaintiff moved to punish the DOE for contempt. *Id.* ¶ 38. Plaintiff believed the DOE was in violation of the court's order because the DOE previously informed Plaintiff that his problem code was supported by misconduct, and his employment file did not contain any documentation of misconduct. *See id.* ¶ 37. However, the DOE now claimed that his problem code was supported by his discontinuance, and the court indicated that it will deny the motion. *Id.* ¶¶ 39-40.

The problem code prevented hiring managers from even considering Plaintiff for DOE employment, and Plaintiff brought the second article 78 proceeding alleging that his license had been constructively terminated without the due process guaranteed by Chancellor's Regulation C-31. *See id.* ¶¶ 36, 41. According to the holding in *Lehman v Board of Education of the City School District of the City of New York*, 88 AD2d 832, 834 (2d Dept 1981), "rules of an administrative agency which regulate procedure affecting substantial

rights of individuals may not be waived by the agency." *Id.* ¶ 43.  Plaintiff was advised in oral argument that the court anticipated dismissing the petition. *Id.* ¶ 45.

Plaintiff brings the instant action alleging that the constructive termination of his license has deprived him of a property interest without the procedural due process guaranteed under the Fourteenth Amendment.   Defendant now moves pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Complaint in its entirety on the grounds that: (1) Plaintiff's claims are barred by res judicata; (2) Plaintiff's claims are barred by the applicable statute of limitations; and (3) Plaintiff has failed to state a claim for relief that is plausible on its face.  Def.'s Mem. of Law in Supp. of Mot. to Dismiss the Compl. ("Def.'s Mem. of Law") 1.

For the reasons set forth below, Defendant's motion should be denied.

## ARGUMENT

**I.     Plaintiff's claims are not barred by the doctrines of res judicata and collateral estoppel.**

Res judicata and collateral estoppel are related but distinct doctrines that "operate to prevent parties from contesting matters that they have had a fair and full opportunity to litigate." *Marvel Characters, Inc. v Simon*, 310 F3d 280, 286 (2d Cir 2002). The full faith and credit clause of the United States Constitution requires a federal court to give the same preclusive effect to a state court judgment as would be given in the state in which it was rendered. *Miagra v Warren City Sch. Dist. Bd. of Educ.*, 465 US 75, 81 (1984).

**A.     Plaintiff's claims are not barred by the doctrine of res judicata.**

New York courts have adopted the "transactional approach" to res judicata, holding that if claims arise out of the same "factual grouping" they are deemed to be part of

4

the same cause of action and the later claim will be barred without regard to whether it is based upon different legal theories or seeks different or additional relief. *Burgos v Hopkins*, 14 F3d 787, 790 (2d Cir 1994), *citing Smith v Russell Sage Coll.*, 54 NY2d 185, 192-93 (1981). "This bar against later claims based upon the same cause of action is, however, subject to certain limitations, one of which is that it will not be applied if the initial forum did not have the power to award the full measure of relief sought in the later litigation." *Davidson v Capuano*, 792 F2d 275, 278 (2d Cir 1986).

Damages recoverable in a CPLR article 78 proceeding are statutorily limited to those damages "incidental to the primary relief sought" and exclude all other claims for monetary relief. CPLR 7806; *see Pauk v Bd. of Trustees of the City Univ. of New York*, 68 NY2d 702 (1986). Any subsequent action seeking damages not incidental to the nonmonetary relief sought in the prior proceeding is not precluded by res judicata, regardless of whether the two actions require relitigation of the same issues between the same parties. Whether damages are "incidental to the primary relief sought" depends upon the facts of the case. *Paulk*, 68 NY2d at 705.

Here, Plaintiff's second article 78 proceeding and the instant action are based on the same underlying facts. In both, Plaintiff asserts that his New York City license was constructively revoked without procedural due process. *See* Decl. of LaRose, Ex. "6" ¶ 3. Nonetheless, even though Plaintiff's federal claim is predicated on the same facts as his state action, it is not barred by the principles of res judicata. *See Giano v Flood*, 803 F2d 769, 771 (2d Cir 1986).

The only relief available to or sought by Plaintiff in the second article 78

5

proceeding was an order annulling the problem code assigned to Plaintiff and granting Plaintiff's application for a Certificate of Eligibility. Decl. of LaRose, Ex. "6" at 15. Indeed, the state court indicated in oral argument that it could not provide retroactive relief or damages to Plaintiff. *Id.*, Ex. "8" at 33-34. Therefore, the compensatory damages sought by Plaintiff in this action were not available to him in the article 78 proceeding, and res judicata does not apply.

The Second Circuit expressly held in both *Davidson* and *Giano* that "a New York plaintiff is not barred from seeking damages, in federal court, on civil rights claims by reason of a prior judgment on the same underlying facts in an Article 78 proceeding requesting . . . affirmative relief." *Davis v Halpern*, 813 F2d 37, 39 (2d Cir 1987). "The reason is that damages are not available in these circumstances in an Article 78 proceeding and therefore that action cannot give the damages relief demanded in a civil rights suit[] such as this one." *Id.* Significantly, it does not matter whether or not the state court eventually rules against Plaintiff in the second article 78 proceeding. The exception to res judicata "is not based on the relative success of the plaintiff in the initial proceeding, but on the nature of the initial proceeding itself." *Burgos*, 14 F3d at 792.

Simply put, res judicata does not bar Plaintiff's federal complaint under § 1983 because the relief Plaintiff seeks was not available to him in an article 78 proceeding.

One final comment is necessary regarding the application of res judicata to a § 1983 action following an article 78 proceeding. If a petitioner seeks damages which the article 78 court is unable to award, that court could simply convert that part of the proceeding, pursuant to CPLR 103(c), into a plenary civil action where the full relief sought would be

available and res judicata would be implicated.  However, a New York court is not compelled

by CPLR 103(c) to sever and convert a claim into its proper form; the power is discretionary.

The Second Circuit held in *Davidson* that, "[t]o require an Article 78 petitioner, on penalty of

later preclusion, to knowingly assert a claim that is improper, in the hope that the state court

in its discretion might sever the claim out and convert it into a civil action, would be unfair

and illogical."  *Davidson*, 792 F2d at 281.  Thus, a holding that a "civil rights suit is not

barred by principles of res judicata is unaltered by the conversion provision of section

103(c)."  *Id.*

The doctrine of res judicata therefore does not preclude Plaintiff from

obtaining relief that was not available to him in the article 78 proceeding notwithstanding the

fact that the federal claim is based on the same cause of action as the state claim.

**B.      Plaintiff's claims are not barred by the doctrine of collateral estoppel.**

The issue raised by Plaintiff in this action is whether he was deprived of a

property interest without due process when his New York City license was constructively

terminated pursuant to Chancellor's Regulation C-205.  Compl. ¶¶ 49-51.  In the previous

article 78 proceedings, Plaintiff neither asserted a property interest in his New York City

license nor alleged that Chancellor's Regulation C-205 deprived him of a property right

without the procedural due process guaranteed under the Fourteenth Amendment.

Apparently invoking the doctrine of collateral estoppel, Defendant wrongly

claims that "[a]ll of Plaintiff's instant claims against the DOE arise from the assignment of

Plaintiff's problem code" and the issue has been litigated "ad nauseam."  Def.'s Mem. of Law

4.

"The doctrine of collateral estoppel precludes a party from relitigating in a subsequent proceeding an issue of law or fact that has already been decided in a prior proceeding." *Boguslavsky v Kaplan*, 159 F3d 715, 719-20 (2d Cir 1998).  Under New York law, the doctrine of collateral estoppel "only applies if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Colon v Coughlin*, 58 F3d 865, 869 (2d Cir 1995).  The burden rests upon the proponent of collateral estoppel to demonstrate the identicality and decisiveness of the issue, while the burden rests upon the opponent to establish the absence of a full and fair opportunity to litigate the issue in prior action or proceeding. *Id.*

According to Defendant, "[i]n the first Article 78 initiated by Plaintiff on the subject, Justice Billing[s] ruled that DOE was able to assign a problem code to Plaintiff's file based on his discontinuance." Def.'s Mem. of Law 4.  Significantly, Justice Billings did not rule that Defendant could constructively terminate Plaintiff's license because of his discontinuance.  The assignment of a problem code and its effect are two different matters.  Collateral estoppel does not apply because the issue in this action is whether Plaintiff's license was constructively terminated as a result of his discontinuance, not whether the DOE can assign a code to indicate that he was discontinued.

Regarding Plaintiff's second article 78 proceeding, Defendant claims that Plaintiff alleged the DOE "constructively terminated [Plaintiff's] New York City license without the due process required . . ." *Id.* at 5 (citations omitted).  Defendant, however, conveniently ignores the fact that Plaintiff alleged he was denied the "due process required *by*

*Chancellor's Regulation C-31.*"  Decl. of LaRose, Ex. "6" ¶ 3 (emphasis added).  A claim that the DOE failed to provide due process in accordance with its regulations is not the same as a claim that the DOE deprived Plaintiff of a property interest without the procedural due process guaranteed under the Fourteenth Amendment.

The burden of proving whether an issue raised and necessarily decided in a previous proceeding is identical to one currently before the court "rests squarely on the party moving for preclusion." *Sullivan v Gagnier*, 225 F3d 161, 166 (2d Cir 2000).  Defendant has not met his burden, and this Court should not preclude litigation of an issue that was not decided in the state court.

Moreover, Plaintiff did not have a full and fair opportunity to have the termination of his license reviewed in accordance with Chancellor's Regulation C-31.  *See* Chancellor's Reg. C-31(3), Aff. of Pepin, Ex. "4" at 3-4.  Defendant did not inform Plaintiff that he was barred from future employment with the DOE as the result of his discontinuance.  According to the decision of the Court in *Pepin v New York City Department of Education,* index No. 102044/11 (January 27, 2014), the DOE insisted that the problem code assigned to Plaintiff did not disqualify him from all employment with the DOE.  Decl. of LaRose, Ex. "3" at 6.  However, the problem code assigned to Plaintiff, A3B1 (Aff. of Pepin ¶ 3 & Ex. "2"), indicates that he is a former employee who failed an investigation by the Office of Personnel Investigations and may not be paid, i.e., hired (*id.* ¶ 5 & Ex. "3" at 2).

Plaintiff's license was thus constructively revoked without procedural due process.  The constructive termination of Plaintiff's license was not a random deprivation of a property interest that the DOE was unable to anticipate, but was codified in Chancellor's

9

Regulation A-205. *See* Chancellor's Reg. C-205 ¶ 25, Aff. of Pepin, Ex. "5" at 14 ("persons whose probationary service was discontinued in one school in the City District may not be reappointed under the same license to another school in the City District"). "In situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking." *Zinermon v Burch*, 494 US 113, 132 (1990). Where a protected property interest is implicated, a post-deprivation hearing only constitutes sufficient due process where the deprivation was unpredictable, pre-deprivation process was impossible, and the officials' conduct was truly "unauthorized." *See id.* at 136-138.

Plaintiff was not deprived of a property interest by the random and unauthorized acts of a state actor, but by a regulation promulgated by the DOE. "The Supreme Court instructs that if a property interest is extinguished pursuant to 'established state procedure' that requires a pre-deprivation constitutional safeguard, that a post-deprivation remedy such as a state Article 78 proceeding does not satisfy due process." *Behrend v Klein*, 2006 US Dist LEXIS 68652, *22 (ED NY Sept. 25, 2006); *cf Vargas v City of New York*, 377 F3d 200, 208 (2d Cir 2004) (holding that an article 78 proceeding provides a meaningful remedy for a deprivation of liberty or property through the conduct of a state employee whose acts are random and unauthorized).

Therefore, Plaintiff has not been afforded a full and fair opportunity to litigate the constructive termination of his license and the doctrine of collateral estoppel does not apply.

**II.** **Plaintiff states a cause of action under 42 USC § 1983 based on the constructive termination of Plaintiff's New York City license.**

The constructive termination of Plaintiff's New York City license constitutes a deprivation of a property interest that is actionable under § 1983. To assert a procedural due process claim under § 1983, the plaintiff must demonstrate that (1) he possessed a property or liberty interest which has been interfered with by the State, and (2) he was deprived of that property or liberty interest without the procedural due process guaranteed by the Constitution. *Kentucky Dept. of Corr. v Thompson*, 490 US 454, 460 (1989).

**A.** **Plaintiff was deprived of a property interest in his New York City License.**

Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents of State Colleges v Roth*, 408 US 564, 577 (1972). Under New York law, "[a] professional license is a valuable property right, reflected in the money, effort and lost opportunity for employment expended in its acquisition, and also in the enhanced earning capacity it affords its holder, which may not be revoked without due process of law." *O'Brien v O'Brien*, 66 NY2d 576, 586 (1985). A teaching license is a professional license. *See McGowan v McGowan*, 142 AD2d 355 (2d Dept 1988); *Brough v Brough*, 285 AD2d 913 (3d Dept 2001); *Pachomski v Pachomski*, 32 AD3d 1005 (2d Dept 2006). Nonetheless, as discussed below, the determination of whether a New York City license confers a property interest has been contingent on the distribution of power within the DOE.

In 1969, the New York City School District was "decentralized" into thirty-one separate "community school districts." *Lombard v Bd. of Educ. of the City of New York*, 645 F Supp 1574, 1578 (ED NY 1986). The Commissioner of Education subsequently held in

*Matter of Baronat*, 11 Ed Dept Rep 150 (1972), that a New York City license was a valuable property right because a teacher dismissed from employment by one of the thirty-one community districts could be reemployed by any of the other thirty-such districts, provided he holds a license. *Id.*

State court decisions, relying on *Baronat*, also suggested that a teaching license conferred a property interest. In *Lehman*, the court held that "[a] board of education may not terminate a teaching license without first holding a hearing at which procedural safeguards are employed." *Lehman*, 82 AD2d at 834. In *Greenwald v Community School Board No. 27, Queens*, 42 AD2d 965, 966 (2d Dept 1973), the court construed *Baronat* to require procedural safeguards when revoking a New York City teaching license, and distinguished this question from the issue of termination of probationary employment, in which the teacher has no property interest.

The District Court for the Eastern District of New York relied on *Baronat* when holding that a New York City teaching license entitled the plaintiff with a property right independent of probationary employment "to a meaningful opportunity to seek employment pursuant to the license." *Lombard*, 645 F. Supp. at 1577-79. However, the court cautioned that its ruling did not preclude the DOE "from establishing a policy with respect to categories of teachers for which it is authorized to do the hiring (e.g., high school and Special Education teachers) to hire only teachers who successfully completed their probationary appointments." *Id.* at 1579. Indeed, the same court held in *Rogovin v New York City Board of Education*, 2001 U.S. District LEXIS 11923, *15-16 (ED NY Aug. 17, 2001), that a high school music teacher did not have a constitutionally protected property value in his license.

12

In 2002, the decentralization of the New York City School District ended with the signing of legislation that granted control of the school system to the city's mayor. Education Law (as amended by L 2002, ch 91); *see* Aff. of Pepin, Ex. "6." The community school boards were eliminated and replaced with community education councils which are only advisory in nature. *See id.* Therefore, the Central Board once again had the power to appoint and dismiss personnel, including probationary employees. The structure of the DOE was similar to that before decentralization, and it is an open question as to whether the issuance of a New York City teacher's license conveys a property interest. *Behrend*, 2006 US Dist LEXIS 68652, *14.

Significantly, the court in *Behrend* did not dismiss teachers' claims that their licenses were terminated without the procedural due process required for the deprivation of a property interest. *Id.* at *20. The court held that, whatever official policies existed, letters written by the regional superintendent reaffirming the discontinuance of plaintiffs' probationary employment and termination of their licenses suggested that the power to fire and revoke licenses was not centralized. *Id.* at *19-20. In addition, the court noted that New York courts have not overruled *Baronat, Lehman,* and *Greenwald,* which suggests that probationary teachers retain a property interest in their teaching licenses independent of their employment. *Id.* at *20.

Since *Behrend*, the structure of power within the DOE has evolved to the point that the power to hire and fire is clearly not centralized within the DOE. Chancellor's Regulation C-30 provides that the Chancellor has delegated the authority to appoint principals of high schools to high school superintendents and the authority to appoint assistant principals

in high schools to the principals of those schools. Chancellor's Reg. C-30(XI)(A)(1)(b) & (e);
Aff. of Pepin, Ex. "7" at 3. Superintendents have the power to terminate probationary
employees and terminate licenses. For example, the Manhattan High School Superintendent
advised Plaintiff in a letter dated September 20, 2010 that she would review and consider, on
October 21, 2010, whether to discontinue Plaintiff's service as a probationary assistant
principal and terminate his license. Aff. of Pepin, Ex. "8." In a letter dated October 21, 2010,
the superintendent reaffirmed Plaintiff's discontinuance and placement on the
ineligible/inquiry list. *Id.*, Ex. "9." After Plaintiff's hearing pursuant to Chancellor's
Regulation C-31, the superintendent again reaffirmed the actions taken against Plaintiff. *Id.*,
Ex. "10." Moreover, the Chancellor has delegated to superintendents the authority to prefer
disciplinary charges pursuant to Education Law § 3020-a against tenured teachers. *Pina-Pena
v New York City Dept. of Educ.*, 2014 NY Slip Op 30893(U) (Sup Ct, NY County 2014);
*Dunn v New York City Dept. of Educ.*, 2011 NY Slip Op 51505(U) (Sup Ct, NY County
2011); *Haas v New York City Bd./Dept. of Education*, 2012 NY Slip Op 50606(U) (Sup Ct,
NY County 2012). Superintendents may then delegate the authority to principals. *Id.*

Under mayoral control, the school system has become increasingly
decentralized as hiring and firing decisions do not rest with the Central Board. Under
*Lombard*, Plaintiff has a property interest in his New York City License.

The DOE has deprived Plaintiff of this property interest by constructively
terminating his license. The Central Board may not determine who is hired or fired, but it
does determine who is *eligible* for employment by issuing and revoking licenses. For
example, Plaintiff attempted to apply for numerous positions which required a certificate of

14

eligibility ("COE") in order to demonstrate that he had a valid license.  Aff. of Pepin, Ex. "11."  The DOE does not explicitly deny a COE, and an application for a COE will remain "under review" if the application is denied.  *See id.*; *see also id.*, Ex. "12" ¶ 6 (asserting that the status for an application of a certificate of eligibility will remain "under review" if the application is denied).  The DOE refused to issue the required certificates to Plaintiff, and he could not be considered for the positions he sought.  Although the DOE now requires applicants to complete a profile online instead of applying for a certificate of eligibility, the effect on Plaintiff is the same.  *Id.*, Ex. "13" at 2, 12.  An employee whose license has been constructively terminated is unable to successfully create a profile and is thus barred from employment with the DOE.  *See id.* at 12.

Defendant's arguments that Plaintiff does not have a property right in his New York City license are contradictory and without merit.  On one hand, Defendant asserts that "since <u>Lombard,</u> the landscape of education law in New York City has undergone important changes" (referring to the centralization of DOE powers).  Def.'s Mem. of Law 7.  According to Defendant, "[t]he Chancellor hired the plaintiff and he is entitled, after plaintiff flunked his probationary period, to invoke a 'one strike and you're out' policy and refuse plaintiff a second chance."  *Id.* at 8, quoting *Rogovin*, 2001 U.S. District LEXIS 11923, *16.  On the other hand, Defendant claims that "there are 32 distinct community school districts within the NYC DOE, and pursuant to Chancellor's Regulation C-205, any 'district other than the one which discontinued the services of a probationer or denied completion of probation may reappoint the probationer to a new probationary term.'"  *Id.* at 9, *quoting* Chancellor's Regulation C-205 ¶ 25.

Defendant appears unaware that the "centralization of DOE powers" allegedly eliminated the power of community school districts to hire and fire staff. Moreover, under *Lombard*, Plaintiff would have a property interest in his New York City license if community school districts could hire Plaintiff as claimed by Defendant. Defendant fails to realize that Chancellor's Regulation C-205 was promulgated in September, 2000, *before* the alleged centralization of DOE powers in 2002. *See* Chancellor's Regulation C-205, Aff. of Pepin, Ex. "5" at 1. The regulation is still in effect, but hopelessly outdated.

Finally, the holding in *Rogovin*, relied on by Defendant to demonstrate that Plaintiff does not have a property interest in his license, is troublesome for two reasons. First, the court incorrectly found that there is "[no] basis under New York law for requiring the Chancellor to afford plaintiff a due process hearing at which the Chancellor would need to make the showing necessary in order to revoke his teaching license." *Rogovin*, 2001 U.S. District LEXIS 11923, *16. New York courts have not overruled *Baronat*, *Lehman*, and *Greenwald*, which means that a board of education may not terminate a teaching license without due process. *See Behrend*, 2006 US Dist LEXIS 68652, *20. Second, the court in *Rogovin* noted that "if plaintiff is correct that his license is now valueless, it is because it never had the value which plaintiff believes it to have." *Rogovin*, 2001 U.S. District LEXIS 11923, *17. Here, Plaintiff had a property interest in his license under *Lombard* before the alleged centralization of DOE powers in 2002, but now, according to Defendant, he does not.

The Supreme Court held in *Roth* that "a State, in regulating eligibility for a type of professional employment, cannot foreclose a range of opportunities in a manner that contravenes [d]ue [p]rocess, and, specifically in a manner that denies the right to a full prior

hearing." *Roth*, 408 US at 574 (internal quotation marks, ellipsis, and citation omitted).

For example, a state legislature cannot enact legislation that authorizes the state education department to hire and fire teachers throughout the state, with the provision that the state education department can delegate the authority to local boards of education, in order to make employment and licensure in that system synonymous. Under such circumstances, termination of employment would, as opined by the Commissioner in *Baronat*, "[leave] the existence of such a license a hollow form, without any legal substance." Alleged centralization of power in a state education department cannot be used to contravene due process, nor should alleged centralization of power in the DOE.

The property value of a license should not be contingent upon the structure of the body that confers the license. Therefore, Plaintiff was wrongfully deprived of a property interest in his New York City license.

**B.      Plaintiff was deprived of a property interest in his New York City license without due process.**

Plaintiff was not informed that his license was terminated and was thus deprived of a property interest without due process. "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v Loudermill*, 470 US 532, 542 (1985) (internal quotation marks omitted). "[A]n individual [must] be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Boddie v Connecticut*, 401 US 371, 379 (1971).

Pursuant to Chancellor's Regulation C-31, Plaintiff received a review of his unsatisfactory rating and discontinuance (Compl. ¶¶ 19-21), but not a review of the

termination of his license.   Defendant's assertion that "even if Plaintiff did have a property right in any city license, he already received due process at the C-31 hearing" is without merit.   Def.'s Mem. of Law 8.   The termination of Plaintiff's license, constructive or otherwise, was not reviewed at the C-31 hearing.   "Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." *Fuentes v Shevin*, 407 US 67, 80 (1972), quoting *Baldwin v Hale*, 68 US 223, 233 (1864).

Moreover, Justice Billings annulled Plaintiff's unsatisfactory rating in Plaintiff's first article 78 proceeding (Decl. of LaRose, Ex. "3" at 7) and certainly would have annulled a determination to terminate Plaintiff's license.   A license can only be terminated for behavior which involves allegations of serious wrongdoing (Chancellor's Reg. C-31[1], Aff. of Pepin, Ex. "4" at 1) and cannot be terminated for behavior which does not even warrant an unsatisfactory rating.

Plaintiff thus states a cause of action under 42 USC § 1983 as a result of the constructive termination of his New York City license and the DOE's failure to provide procedural due process prior to the deprivation of Plaintiff's property interest in that license.

**C.**     **Plaintiff was deprived of a property interest in his New York State licenses without due process.**

The constructive termination of Plaintiff's New York City license significantly diminished the value of Plaintiff's New York State licenses without the procedural due process guaranteed under the Fourteenth Amendment.

According to the 2010 census, the population of New York State was 19,378,112 and the population of New York City was 8,175,136.   2010 census data for New York     City     and     New     York     State     are     *available     at*

18

http://quickfacts.census.gov/qfd/states/36/3651000.html.  An argument could be made that the termination of a New York City license diminishes the value of a New York State license by approximately 42%.[1]  Certainly the value of a New York State license is significantly diminished by the termination of a New York City license.

Plaintiff's New York City license was constructively revoked without due process.  Therefore, Plaintiff's property interest in his New York State licenses was diminished without due process.

**III.** **Plaintiff's claim is not time-barred under the applicable statute of limitations.**

The statute of limitations applicable to a section 1983 claim accruing in New York is three years.  *See Pearl v City of Long Beach*, 296 F3d 76, 79 (2d Cir 2002).  "Under federal law, which governs the accrual of claims brought under § 1983, a claim accrues once the plaintiff knows or has reason to know of the injury which is the basis of his action."  *Veal v Geraci*, 23 F3d 722, 724 (2d Cir 1994) (internal quotation marks and citation omitted).  Here, Plaintiff's cause of action asserts that he suffered an injury – the deprivation of a property interest without due process – when his license was constructively terminated solely as the result of the discontinuance of his probationary service.  Verified Compl. ¶¶ 47-51.

"The crucial time for accrual purposes is when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action."  *Singleton v City of New York*, 632 F2d 185, 192 (2d Cir 1980).  Defendant first informed Plaintiff in an affidavit dated April 7, 2014 that his problem code, and thus the constructive

---

[1]   8,175,136 is approximately 42% of 19,378,112.  Notably, New York City has a population greater than that of 39 states.   2010 census data for states is *available at* http://www.census.gov/2010census/data/apportionment-pop-text.php.

termination of his license, was solely supported by his discontinuance. Plaintiff's claim therefore accrued on or about April 7, 2014 and is not time-barred.

Defendant claims that "the statute of limitations on Plaintiff's Section 1983 claim began at the time Plaintiff was terminated and assigned a problem code in October 2010." Def.'s Mem. of Law 6. When Plaintiff was discontinued, his problem code was not just supported by his discontinuance, but also by the SCI report which substantiated that Plaintiff used FlexiSPY software to access the email accounts of DOE employees. Indeed, Defendant asserted in Plaintiff's first article 78 proceeding that it placed "a code in [Plaintiff's] DOE employment records to indicate that [Plaintiff] was terminated for misconduct and that his record would need further review if he applied for or was offered employment with DOE or its contractors." Aff. of Pepin, Ex. "14" at 9-10. In addition, Plaintiff received a letter dated April 23, 2013 from the Office of Personnel Investigation of the DOE which stated that his application for employment was "denied based on an investigation conducted by the Special Investigation of Investigation (SCI) which substantiated that [Plaintiff] used FlexiSPY software to access the email accounts of three DOE principals without permission or authority." *Id.*, Ex. "15."

Moreover, the instant claim could not have accrued in October, 2010 as claimed by Defendant because Plaintiff requested and received a hearing pursuant to Chancellor's Regulation C-31 to review his unsatisfactory rating and discontinuance. A hearing pursuant to Chancellor's Regulation C-31 provides procedural due process for the deprivation of a property interest. *Segal v City of New York*, 368 F Supp 2d 360, 362-63 (SD NY 2005). In Plaintiff's first article 78 proceeding, the Supreme Court reviewed the findings

of the hearing and, in a decision dated January 27, 2014, annulled Plaintiff's unsatisfactory

rating and problem code, "to the extent that the problem code is supported by the annulled

unsatisfactory rating, unsubstantiated misconduct recited in a Special Commissioner of

Investigations report, or misconduct not documented in [Plaintiff's] employment file." Decl.

of LaRose, Ex. "3" at 8. Significantly, Plaintiff's employment file does not properly contain

documentation of substantiated misconduct.[2]

After the court's decision, Plaintiff was still assigned a problem code by the

DOE which barred his employment. Compl. ¶¶ 35-37. Plaintiff made a motion to punish the

DOE for contempt for assigning a problem code to him that was supported by unsubstantiated

misconduct. *Id.* ¶ 38. In an affidavit dated April 7, 2014, Defendant asserted, for the first

time, that Plaintiff's problem code was only supported by his discontinuance. Aff. of Pepin,

Ex. "16" ¶¶ 5-6. Therefore, the instant claim accrued on or about April 7, 2014 when Plaintiff

learned, for the first time, that the constructive termination of his license was improperly

supported by his discontinuance pursuant to Chancellor's Regulation C-205.

Plaintiff's claim was thus brought within the applicable statute of

---

[2]    Justice Billings incorrectly held that Plaintiff's employment file properly contained a copy of the
SCI report which substantiated that Plaintiff sent a prank email using the DOE email system. The
holding is incorrect for three reasons. First, the DOE violated its own rules by placing the SCI report
in Plaintiff's employment file with neither his signature acknowledging receipt of the report nor a
witness's statement attesting to his refusal to sign. *Applewhite v Bd. of Educ of City Sch. Dist of City
of New York*, 115 AD3d 427, 427 (1st Dept 2014). Second, the incident regarding the prank email was
not reduced to writing within three months in violation of the contract between the DOE and the
Council of Supervisors and Administrators. Compl. ¶ 25. Lastly, the SCI report does not allege that
the email was sent using the DOE email system. *See generally* Aff. of Pepin, Ex. "17" at 3-5.

Significantly, Justice Billings' incorrect determination that the SCI report is properly contained in
Plaintiff's file was not essential to any of her decisions, and the doctrine of collateral estoppel does not
apply. *See Kleinberger v Town of Sharon*, 116 AD2d 367, 369 (3d Dept 1986), citing *Silberstein v
Silberstein*, 218 NY 525 (1916) ("a judgment does not work an estoppel as to unessential facts, even
though put in issue by the pleadings and directly decided").

limitations and is not time-barred.

**IV.    Lawsuits filed by Plaintiff against Defendant are neither duplicative nor harassing.**

Plaintiff, a pro-se litigant, is attempting to restore his professional reputation. In doing so, he is not, as claimed by Defendant, filing harassing and vexatious lawsuits against the DOE. Def.'s Mem. of Law 11.

In 2010, the DOE issued Plaintiff an unsatisfactory rating and discontinued his probationary service after the SCI released a report substantiating allegations that Plaintiff used FlexiSPY software to access the email accounts of three DOE principals and a superintendent. Compl. ¶¶ 16-20. The report was widely distributed by broadcast, print (Aff. of Pepin, Ex. "18") and digital media (*id.*, Ex. "19").[3]  In an interview on WABC-TV, Richard J. Condon, the Special Commissioner of Investigation, described Plaintiff's conduct as follows:  "He was opening their emails.  He was sending emails in their names that were fictitious.  He was erasing emails that were meant to be sent to people.  At one point, he even sent an email to the Chancellor."  A video recording of the interview is *available at* http://abclocal.go.com/story?section=news/local&id=7605103; *see also* Aff. of Pepin, Ex. "20" at 1 (providing a summary of the news segment).  The DOE released the following statement: "Both Superintendent Francesca Pena and Assistant Principal Milciades Pepin engaged in serious wrongdoing and undermined their ability to continue as leaders in our school system. When confronted with the report, Ms. Pena resigned irrevocably. We are also taking steps to terminate Mr. Pepin." Aff. of Pepin, Ex. "20" at 2.

---

[3]  The SCI report remains posted on SCI's website at http://www.nycsci.org/reports/08-10%20PepinM-Penaf%20Ltr.pdf.

Plaintiff requested a hearing pursuant to Chancellor's Regulation C-31 to review his unsatisfactory rating and discontinuance. Compl. ¶ 21. During the hearing, the lead SCI investigator, Robert Caiati, testified that he did not substantiate that Plaintiff accessed the email accounts of others or sent disturbing emails. *See generally* Aff. of Pepin, Ex. "21." The only substantiated misconduct of Plaintiff was his admission that he sent a prank email regarding a love triangle. *Id.* at 5. Nonetheless, Plaintiff's appeal from his unsatisfactory rating and discontinuance was denied. *Id.*, Ex. "22" at 5. Plaintiff thereafter brought two article 78 proceedings. Compl. ¶¶ 28, 41.

Plaintiff's first article 78 proceeding successfully challenged his unsatisfactory rating and placement on the ineligible/inquiry list. *See id.* ¶ 32. The court annulled his unsatisfactory rating and problem code to the extent that the problem code was supported by misconduct not documented in his employment file, but upheld Plaintiff's discontinuance on the grounds that a probationary employee may be terminated for any reason or no reason at all. Decl. of LaRose, Ex. "3" at 1, 7-8.

After the court's decision, Plaintiff's problem code continued to prevent his employment with the DOE, and Plaintiff moved to punish the DOE for contempt. Compl. ¶ 38. Plaintiff believed the DOE was in violation of the court's order because the DOE previously informed Plaintiff that his problem code was supported by misconduct, and his employment file did not contain any documentation of misconduct. *See id.* ¶ 37. However, the DOE claimed, for the first time, that his problem code was only supported by his discontinuance, and the court indicated that it will deny the motion. *Id.* ¶¶ 39-40

The problem code prevented hiring managers from even considering Plaintiff

for DOE employment, and Plaintiff brought the second article 78 proceeding alleging that his license had been constructively terminated without the due process guaranteed by Chancellor's Regulation C-31.  *See id.* ¶¶ 36, 41.  According to the holding in *Lehman*, "rules of an administrative agency which regulate procedure affecting substantial rights of others may not be waived by the agency."  *Lehman*, 88 AD2d at 834.

Plaintiff now brings this action alleging that the constructive termination of his license has deprived him of a property interest without the procedural due process guaranteed under the Fourteenth Amendment.

Contrary to Defendant's assertions, legal proceedings and actions commenced by Plaintiff are neither duplicative nor without merit.

Defendant asserts that "Plaintiff has caused needless expenses and an unnecessary burden on the City of New York, State of New York, and United States of America by filing repetitive lawsuits against DOE in state and federal court" (Def.'s Mem. of Law 11), but ignores or dismisses the expenses and pain incurred by Plaintiff – a probationary employee of the DOE for over 15 years with an excellent performance record – after the publication of false charges against him.   Plaintiff retained an attorney to file the first article 78 petition (*see* Aff. of Pepin, Ex. "1" at 2, 18), but the attorney was remiss in not pursuing a stigma-plus claim on Plaintiff's behalf.  Now Plaintiff's sole chance for vindication is to be rehired by the DOE.  Plaintiff is well aware that the DOE is not obligated to do so, but his New York City license at least gives him the right to be *considered* for employment.

The DOE may not terminate this right without providing Plaintiff with procedural due process.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court to deny Defendant's motion to dismiss the complaint.

Dated: New York, New York
April 28, 2015

By: _____

Milciades Pepin
Plaintiff, *pro se*
2120 Hughes Avenue, Apt. 5B
Bronx, New York 10457
(917) 250-7588
milciades.pepin@icloud.com