UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MILCIADES PEPIN,

                Plaintiff,

          -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                Defendants.

**OPINION AND ORDER**

14 Civ. 9657 (ER)

Ramos, D.J.:

      Milciades Pepin ("Plaintiff"), acting *pro se*, brings this action against the New York City Department of Education ("Defendant" or "the DOE"), pursuant to 42 U.S.C. § 1983, alleging that the DOE deprived him of a property interest in his New York City and New York State educational licenses without the procedural due process guaranteed under the Fourteenth Amendment.  Defendant now moves to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiff's due process claim is barred by the applicable statute of limitations and by the doctrine of *res judicata*.  Defendant also seeks an injunction enjoining Plaintiff from bringing any further actions relating to his educational license in either federal or state court without first seeking leave of the court.  For the following reasons, Defendant's motion to dismiss is GRANTED as Plaintiff's claims are time-barred, and Defendant's request for an injunction is DENIED.

## I. BACKGROUND[1]

### A. Factual Background

Plaintiff was hired by the DOE in 1994, serving initially as a bilingual special education teacher before becoming a probationary assistant principal. *Id.* ¶ 6, 10. On August 11, 2010, the DOE's Special Commissioner of Investigation ("SCI") released an investigative report substantiating allegations that Plaintiff had used a software program to access the email accounts of four colleagues. *Id.* ¶ 16. The same report also substantiated allegations that Plaintiff sent a prank email to a principal and school superintendent alleging the existence of a love triangle between himself and several colleagues. *Id.*

On October 21, 2010, the Superintendent of Manhattan High Schools, Elaine Gorman, wrote Plaintiff to tell him that, as a consequence, his employment would be discontinued and he would be placed on the DOE's "ineligible/inquiry list." *Id.* ¶ 19. Furthermore, in early December 2010, Plaintiff received an "unsatisfactory" rating for the 2009-2010 school year. *Id.* ¶ 20.

Plaintiff subsequently requested a Chancellor's Committee hearing to review the circumstances of his discontinuance and unsatisfactory rating. *Id.* ¶ 21. At the hearing, the lead SCI investigator in Plaintiff's case testified, in direct contradiction to the SCI report, that the

---

[1] The following facts are based on the allegations in the Complaint, Doc. 1, which the Court accepts as true for purposes of the instant motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). On a motion to dismiss pursuant to Rule 12(b)(6), the Court may also consider facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence. *Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 244 (S.D.N.Y. 2011) (citations omitted); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). As discussed below, the Court has considered certain documents filed in connection with two Article 78 Petitions Plaintiff filed in New York Supreme Court. The Court may take judicial notice of such documents. *See Faulkner v. Verizon Commc'n, Inc.*, 156 F.Supp.2d 384, 391 (S.D.N.Y.2001) (explaining that a court "may take judicial notice of pleadings in other lawsuits attached to the defendants' motion to dismiss, as a matter of public record" (citations omitted)); *see also Sheppard v. Lee*, No. 10 Civ. 6696, 2011 WL 5314450, at *1 n.2 (S.D.N.Y. Nov. 7, 2011) (taking judicial notice of state court proceedings attached to the motion to dismiss in a Section 1983 case) (Report and Recommendation), *adopted*, 2011 WL 6399516 (S.D.N.Y. Dec. 20, 2011).

SCI's investigation did not confirm allegations that Plaintiff had used a software program to access his colleagues' email accounts.  *Id*. ¶ 22.  The SCI investigator did testify, however, that the investigation supported allegations that Plaintiff had sent a prank email regarding a love triangle.  *Id*. ¶ 23.  At the conclusion of the hearing, the Chancellor's Committee unanimously recommended that Plaintiff's discontinuance and unsatisfactory rating be upheld.  *Id*. ¶ 26.

On February 16, 2011, Plaintiff filed an Article 78 petition in New York State Supreme Court, challenging the discontinuance of his probationary employment, the issuance of the unsatisfactory rating, and his placement on the DOE's ineligible/inquiry list.[2]  *Id*. ¶ 28; *see* Verified Petition at 11, *Pepin v. Dep't of Ed.*, Index No. 102044/2011 (N.Y. Sup. Ct. Feb. 16, 2011).  The DOE moved to dismiss the petition, and clarified during court proceedings that it does not maintain an "ineligible/inquiry" list, as alleged by Plaintiff.  *Id*. ¶ 29.  However, the DOE does assign "problem codes," which serve effectively the same function of indicating to the DOE that the employee has previously had their employment involuntarily discontinued.[3]  *Id*.; State Court Hearing Transcript (9/24/2014), Doc. 11-8 at 2.  According to the DOE, all employees who are discontinued are assigned a problem code.  Compl. ¶ 39; Ex. 16 ¶ 6.[4]

In an October 5, 2012 interim order, the State Supreme Court granted the DOE's motion to dismiss the petition insofar as it sought reinstatement of Plaintiff's probationary employment, noting that as a probationary employee of the DOE, Plaintiff could be discontinued for any reason, including the prank email Plaintiff ultimately admitted he wrote and sent to his superiors.

---

[2] The Complaint mistakenly states that Plaintiff filed the Article 78 petition "in or about April, 2011." Plaintiff in fact filed the petition on February 16, 2011.

[3] In his briefing before this Court, Plaintiff synonymously refers to his placement on an "ineligible/inquiry list" and his assignment of a "problem code."  Both have the effect of flagging his DOE personnel file, which Plaintiff claims resulted in his inability to obtain the certificate necessary to regain employment with the DOE.  *See* Compl. ¶¶ 34-36; *see also* State Court Hearing Transcript (9/24/2014), Doc. 11-8 at 2.

[4] All "Ex." references are to the exhibits attached to the Affirmation of Milciades Pepin in Opposition to Defendant's Motion to Dismiss the Complaint, Doc. 15.

3

*Id.* ¶ 30, 31; *see* Decision and Order, *Pepin v. Dep't of Ed.*, Index No. 102044/2011 (N.Y. Sup. Ct. Oct. 5, 2012). However, in a final decision dated January 27, 2014 (the "January 27, 2014 Order"), the State Supreme Court ordered the DOE to annul Plaintiff's unsatisfactory rating and to annul the problem code assigned to his DOE file "*to the extent that* the problem code is supported by the annulled unsatisfactory rating, unsubstantiated misconduct recited in [the SCI report], or misconduct not documented in petitioner's employment file." Decision and Order, *Pepin v. Dep't of Ed.*, Index No. 102044/2011 (N.Y. Sup. Ct. Jan. 27, 2014) (emphasis added); Compl. ¶ 32.

On March 4, 2014, Plaintiff applied for a Certificate of Eligibility ("COE") in order to re-obtain a supervisory position with the DOE. *Id.* ¶¶ 34, 35. However, his application was denied because he was still assigned a problem code. *Id.* ¶ 36. On March 10, 2014, Plaintiff filed a motion in State Supreme Court to hold the DOE in contempt for allegedly failing to comply with the court's January 27, 2014 Order. *Id.* ¶ 38. In an affidavit filed on April 7, 2014, a DOE administrator explained that the assignment of Plaintiff's problem code was not based upon his annulled unsatisfactory rating, or any unsubstantiated or undocumented misconduct. *Id.* ¶ 39; Ex. 16 ¶ 6. Rather, the problem code was based solely upon the discontinuance of Plaintiff's probationary employment. Compl. ¶ 39; Ex. 16 ¶ 6. On October 6, 2015, the State Supreme Court denied Plaintiff's contempt motion. Decision and Order, *Pepin v. Dep't of Ed.*, Index No. 102044/2011 (N.Y. Sup. Ct. Oct. 6, 2015).

On July 15, 2014, Plaintiff filed a second Article 78 petition in State Supreme Court, this time asserting that the problem code assigned to him by the DOE effectively prohibited Plaintiff from future employment with the DOE, and therefore constructively terminated his educational license without due process. *Id.* ¶ 41; *see* Verified Petition, *Pepin v. Dep't of Ed.*, Index No.

100727/2014 (N.Y. Sup. Ct. Jul. 15, 2014).  On November 20, 2015, the State Supreme Court dismissed Plaintiff's the due process claims in Plaintiff's second Article 78 petition on *res judicata* grounds and for failure to state a claim.  Decision and Order, *Pepin v. Dep't of Ed.*, Index No. 100727/2014 (N.Y. Sup. Ct. Nov. 20, 2015).

**B. Procedural Background**

Plaintiff filed the instant action on December 8, 2014.  Plaintiff maintains that the problem code assigned to him by the DOE has precluded him from being able to re-obtain employment with any other school in the District.  Compl. ¶¶ 47, 49.  Plaintiff's Complaint thus makes two claims:  (1) the DOE, in assigning the problem code, constructively terminated Plaintiff's New York City teaching license without providing procedural due process; and (2) in constructively terminating Plaintiff's New York City license, the DOE thereby diminished the value of his New York State certificates without providing procedural due process.  Plaintiff alleges that both violations have resulted in a deprivation of his rights under 42 U.S.C. § 1983.

On April 3, 2015, Defendant filed a motion to dismiss the Complaint.  The motion asserts that Plaintiff has failed to state a claim upon which relief can be granted, and that his claims are barred by the applicable statute of limitations and the doctrine of *res judicata*.

**II. LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation and internal quotation marks omitted).  The issue at this stage is therefore "not whether a Plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 St.Ct. 1683, 40

L.Ed.2d 90 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  A Plaintiff must make sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.

Where a complaint was filed by a *pro se* Plaintiff, it must be construed liberally, *Hill v. Curcione*, 657 F.3d 116, 122 (2d. Cir. 2011), and the court must interpret the complaint "to raise the strongest claims that it suggests."  *Id.* (quoting *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 475, 474 (2d Cir.2006) (internal quotation marks omitted).  Nonetheless, a *pro se* complaint must state a plausible claim for relief "sufficient to raise a 'right to relief above the speculative level.'"  *Jackson v. NYS Dep't of Labor*, 709 F.Supp.2d 218, 224 (S.D.N.Y. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## III. DISCUSSION

### A. Plaintiff's Claims Are Time-Barred

To determine the applicable statute of limitations for a Section 1983 claim, 42 U.S.C. § 1988 instructs district courts to borrow from analogous state law.  *Board of Regents of University of State of N.Y. v. Tomanio*, 446 U.S. 478, 485 (1980) (citing *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 465 (1975)).  The applicable statute of limitations for Section 1983 actions in the State of New York is three years.  *See Owens v. Okure*, 488 U.S. 235, 251 (1989) (applying New York's three-year statute of limitations governing general personal injury actions to Section 1983 claims).

"While state law supplies the statute of limitations for claims under [Section] 1983, federal law determines when a federal claim accrues."  *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994).  Under federal law, a claim generally accrues "when the Plaintiff knows or has reason to know of the injury which is the basis of his action."  *Covington v. City of New York*, 171 F.3d

117, 121 (2d Cir. 1999) (internal quotation marks omitted).  The court must therefore identify "precisely" the "unlawful employment practice," *Delaware State College v. Ricks*, 449 U.S. 250, 257 (1980), or "operative decision" the Plaintiff complains of, *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981), and determine when it has been communicated to the Plaintiff.  *Palkovic v. Johnson*, 150 F. App'x 35, 36 (2d Cir. 2005) (citing *Chardon*, 454 U.S. at 6, 8; *Ricks*, 449 U.S. at 257).

The unlawful employment practice Plaintiff complains of is the DOE's assignment of a problem code to his employment file.  Taking the facts in the Complaint as true, the DOE discontinued Plaintiff's employment and concurrently flagged his employment file on October 21, 2010.  Plaintiff unambiguously indicated that he was informed that his file had been flagged by a letter he received from Superintendent Gorman that same day.  Compl. ¶ 19.  Therefore, Plaintiff knew of the "operative decision" that resulted in his injury when it occurred in 2010.  Consequently, Plaintiff's Section 1983 claim is barred, because it is based upon an injury that accrued more than three years prior to Plaintiff's initiation of this action on December 8, 2014.

Plaintiff argues, however, that his claim did not accrue until April 7, 2014 when "Defendant first informed [him] in an affidavit . . . that his problem code, and thus the constructive termination of his license, was solely supported by his discontinuance."  Pl. Opp'n Mem. 19-20.  Plaintiff, in other words, assumed that the flag on his file, which he admits the DOE informed him of in 2010, was solely premised upon unsubstantiated misconduct, and thus had been annulled by the State Supreme Court's January 27, 2014 Order restricting the bases upon which the problem code could be assigned.  Therefore, Plaintiff claims he didn't realize that the problem code remained on his personnel file until he found out in April 2014 that it was premised upon his discontinuance as a probationary employee and not on unsubstantiated conduct.

7

Yet, as stated above, Plaintiff knew that his file had been flagged when he received the letter from Superintendent Gorman on October 21, 2010.  The statute of limitations does not toll simply because Plaintiff mistakenly assumed that the problem code was removed when the State Supreme Court issued the January 27, 2014 Order.  The Supreme Court did not simply order the DOE to annul the problem code.  It ordered the DOE annul the problem code "*to the extent*" that it was premised on unsubstantiated misconduct.  Compl. ¶ 32 (emphasis added).  Therefore, whatever new information Plaintiff alleges he learned in 2014 does not change that the alleged due process violation giving rise to his instant Section 1983 claims occurred in 2010, and that Plaintiff was unequivocally aware of the alleged violation at that time.

Furthermore, the law is clear that a claim accrues when an injury becomes known, regardless of when its effects are ultimately felt.  *See Brevot v. New York City Dept. of Educ.*, No. 04 Civ. 1959, 2007 WL 690130, *8, (S.D.N.Y. Mar. 6, 2007), *aff'd*, 299 Fed. App'x 19 (2d Cir. 2008) (holding that a Plaintiff's alleged due process cause of action arose at the time she was placed on the DOE's Ineligible List without a hearing "and not six years later when she once again faced the consequences of being on the Ineligible List."); *see also Palkovic*, 150 F. App'x at 36 (quoting *Chardon*, 454 U.S. at 8) ("[T]he court must focus 'on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful' in order to decide when the Plaintiff's cause of action accrued for the time-bar purposes."); *Ricks*, 499 U.S. at 258 (concerning when the statute of limitations begins to run, "the emphasis is not upon the effects of earlier employment decisions; rather it is upon whether any present *violation* exists") (internal quotation marks omitted).  Thus, it is immaterial that Plaintiff was unaware of the complete effects of his discontinuance until 2014, when he was denied a COE.

Plaintiff argues alternatively that his lawsuit is nonetheless timely because the statute of limitations was tolled when he filed an internal appeal to review his unsatisfactory rating and discontinuance in 2010.  Pl. Opp'n Mem. 20.  Indeed, an otherwise time-barred Section 1983 action may be revived by demonstrating cause for equitable tolling.  *See, e.g., Abbas v. Dixon*, 480 F.3d 636, 641-42 (2d Cir. 2007).  However, it has long been held that the "pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations period." *Ricks*, 449 U.S. at 261 (faculty member's discrimination claim not tolled by Board of Trustees' review of the faculty member's grievance); *see also Floyd v. New York City Dept. of Educ.*, 2014 WL 171156, 10 Civ. 8951, (S.D.N.Y. Jan. 13, 2014) (a school aide's challenges of suspension and termination from employment through grievance procedures with the DOE could not toll the limitations period).  The Second Circuit has specifically held that a Plaintiff's "pursuit of a state remedy, such as an Article 78 proceeding, does not toll the Section 1983 statute of limitations for filing a claim pursuant to [Section] 1983." *Abbas*, 480 F.3d at 641 (citing *Meyer v. Frank*, 550 F.2d 726, 728-30 (2d Cir. 1977); *Williams v. Walsh*, 558 F.2d 667, 672 (2d Cir. 1977).  Therefore, neither Plaintiff's internal review hearing before the Chancellor's Committee nor his Article 78 petitions to the State Supreme Court tolled the applicable statute of limitations.

For these reasons, the Court finds that Plaintiff's claims are barred by the applicable statute of limitations. Accordingly, Defendant's motion to dismiss is granted.[5]

## B. The Court Refuses to Enjoin Plaintiff from Pursuing Further Claims Related to this Action

Defendant requests that the Court enjoin Plaintiff from filing any further actions against the DOE in relation to this matter.  Def. Mem. at 9–12.  "A district court not only may but should

---

[5] Because the claims are time-barred, the court need not address Defendant's alternative argument that they are barred by the doctrine of *res judicata*.

9

protect its ability to carry out its constitutional functions against the threat of onerous, multiplicitous, and baseless litigation." *Abdullah v. Gatto*, 773 F.2d 487, 488 (2d Cir. 1985). Therefore, the Second Circuit has held that "[t]he issuance of a filing injunction is appropriate when a plaintiff abuses the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive proceedings." *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000) (internal quotation marks omitted).

Defendant cites *Safir v. U.S. Lines, Inc*, 792 F.2d 19, 24 (2d Cir. 1986) to suggest that Plaintiff's present litigation is harassing and duplicative. *Safir* directs courts to consider five factors when determining whether to enjoin a party from future claims:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits;
>
> (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?;
>
> (3) whether the litigant is represented by counsel;
>
> (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and
>
> (5) whether other sanctions would be adequate to protect the courts and other parties.

*Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986). Ultimately, the question is "whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Id.*

The Court finds that Plaintiff's behavior falls well outside the universe of *Safir*. The plaintiff in *Safir* was restricted from future litigation following *twenty years* of litigating claims that were being used to "block and hinder various business transactions of the defendants," and

which were "resoundingly rejected by the courts." *Id.* In comparison, Plaintiff has filed just a single action in federal court.[6]

Defendant argues that Plaintiff may be enjoined even if he has only filed a single action in federal court, because he has pursued the same claims more than once in state court. Defendant cites *Davey v. Dolan*, in which the court found that Plaintiff had a history of vexatious litigation with respect to issues arising out of the dissolution of his marriage. 453 F. Supp. 2d 749, 756 (2d Cir. 2006).

But *Davey* is hardly an apt comparison to the case at hand. In *Davey*, the plaintiff sued his ex-wife, her brother, her sister, his own son, his ex-wife's attorney, and the attorney's law firm in three separate state court proceedings and also sued the judge who presided over his divorce and the State of New York. *Id.* Furthermore, no court found that there was any merit to any of the *Davey* plaintiff's claims. *Id.* Here, Plaintiff has filed just two related Article 78 petitions in state court, one in which he partially prevailed, prior to filing this suit in federal court. The Court, therefore, does not find that Defendant "has a history of vexatious litigation [and] is likely to continue to abuse the judicial process and harass other parties." *Safir*, 792 F.2d at 24.

---

[6] Defendant also points to *Abdullah v. Gatto*, in which the Second Circuit permitted a district court to limit an incarcerated plaintiff's ability to bring *in forma pauperis* actions. Yet the Circuit ultimately found that an order "effectively blocking any action whatsoever" relating to plaintiff's conviction and incarceration—essentially what Defendant seeks here—would be overbroad. *Abdullah,* 773 F.2d at 488.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is GRANTED. Defendant's request for a filing injunction is DENIED. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 10, and close the case.

It is SO ORDERED.

Dated:    March 4, 2016
         New York, New York

                                              _____
                                              Edgardo Ramos, U.S.D.J.